**STATE of Iowa, Appellee,**

v.

**James Daryl SPEICHER, Appellant.**

**No. 99–1931.**

Supreme Court of Iowa.

April 25, 2001.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, John P. Sarcone, County Attorney, and Stephanie L. Cox, Assistant County Attorney, for appellee.

NEUMAN, Justice.

This appeal by James Speicher challenges the sufficiency of the proof offered by the State to sustain his conviction for conspiracy to manufacture methamphetamine in violation of Iowa Code section 124 .401(1)(b)(7) (1999). We transferred the case to the court of appeals. That court

affirmed the conviction but, on Speicher's application, we granted further review. Because we are convinced the record contains no proof on the essential "agreement" element of conspiracy, we now vacate the court of appeals' decision and reverse that portion of the district court judgment.

The facts are essentially undisputed. While on routine patrol, police officers detected the odor of ether coming from a garage. Suspecting a methamphetamine operation, they called for assistance from the narcotics team and set up surveillance. One of the officers observed a man step out of the garage, smoke a cigarette and return to the garage. Shortly thereafter, two men exited the building. They began walking up the driveway, looking in the general direction of the police. After walking ten to fifteen feet, both men took off running. The officers pursued and apprehended the men. They were identified as Kelley Page and James Speicher.

The garage, and the house to which it was attached, were owned by Page. Narcotics officers surveyed the garage and observed numerous devices and items used to make methamphetamine including a stove with a make-shift chimney, a hose running from a gas can to the stove, discarded battery casings, coffee filters containing a sludge by-product of the manufacturing process, spoons with residue, five boxes of over-the-counter cold medicine and containers of liquid containing small quantities of manufactured methamphetamine. They also found one air-purifying respirator and a pair of work gloves.

Page consented to the search. He accompanied his consent with the following statement: "I may as well sign [the consent-to-search form], but I want you to understand that I was manufacturing the meth for my own use."

Testing of the drugs seized from the garage revealed 3.97 grams of manufactured methamphetamine and sufficient precursors to produce approximately 2.2 grams of the drug. The State charged Page and Speicher with conspiracy to manufacture a schedule II controlled substance, methamphetamine, in violation of Iowa Code section 124.401(1)(b)(7), manufacture of a schedule II controlled substance, methamphetamine, in violation of Iowa Code section 124.401(1)(b)(7), and interference with official acts in violation of Iowa Code section 719.1. Speicher pleaded not guilty and the case proceeded to trial.

Based on the evidence sketched above, the jury returned guilty verdicts against Speicher on the conspiracy and interference charges. The court overruled Speicher's motions for judgment of acquittal and new trial, rejecting his claim that the State failed to present "one scintilla of evidence as to any conspiracy by agreement or act of the Defendant." The court then sentenced Speicher to an indeterminate twenty-five year term of imprisonment for conspiracy to manufacture methamphetamine, to run concurrently with a one-year term on the interference charge.

## I. Issue on Appeal and Scope of Review.

This appeal by Speicher is limited solely to the judgment and sentence imposed on the conspiracy charge. The question is whether the State produced sufficient evidence to permit a jury to find beyond a reasonable doubt that Speicher conspired with Page to manufacture methamphetamine.

Because a jury verdict is binding on us when supported by substantial evidence, our appellate review is limited to the correction of errors at law. *State v. Hopkins,* 576 N.W.2d 374, 377 (Iowa 1998).

Evidence is substantial if it could convince a rational jury of a defendant's guilt beyond a reasonable doubt. *Id.; State v. Casady,* 597 N.W.2d 801, 804 (Iowa 1999). In making an assessment of the sufficiency of evidence, we are obliged to view the record in the light most favorable to the State. *Hopkins,* 576 N.W.2d at 377. But we must consider all the evidence in the record, not just the evidence supporting guilt. *Id.*

■■■ Although direct and circumstantial evidence are equally probative, the inferences to be drawn from the proof in a criminal case must "raise a fair inference of guilt as to each essential element of the crime." *State v. Casady,* 491 N.W.2d 782, 787 (Iowa 1992). Evidence is not substantial if it raises only suspicion, speculation or conjecture. *Id.*

## II. Analysis.

Iowa Code section 124.401(1) makes it a crime "for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance ... or conspire with one or more other persons to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance...." Subsection (b)(7) classifies the offense as a "B" felony if the crime involves "[m]ore than five grams but not more than five kilograms of methamphetamine." Iowa Code § 124.401(1)(b)(7).

Iowa Code section 706.1 defines the crime of conspiracy:

1. A person commits conspiracy with another if, with the intent to promote or facilitate the commission of a crime which is an aggravated misdemeanor or felony, the person does either of the following:

a. Agrees with another that they or one or more of them will engage in conduct constituting the crime or an attempt or solicitation to commit the crime.

b. Agrees to aid another in the planning or commission of the crime or of an attempt or solicitation to commit the crime.

2. It is not necessary for the conspirator to know the identity of each and every conspirator.

3. A person shall not be convicted of conspiracy unless it is alleged and proven that at least one conspirator committed an overt act evidencing a design to accomplish the purpose of the conspiracy by criminal means.

4. A person shall not be convicted of conspiracy if the only other person or persons involved in the conspiracy were acting at the behest of or as agents of a law enforcement agency in an investigation of the criminal activity alleged at the time of the formation of the conspiracy.

■■ The foregoing statutes teach that in order to prove Speicher conspired to manufacture methamphetamine, the State was required to show that (1) Speicher agreed with Page that one or both of them would manufacture or attempt to manufacture a controlled substance, in this case methamphetamine; (2) Speicher entered into such an agreement with the intent to promote or facilitate the manufacture of methamphetamine, a class "B" felony; (3) Speicher or Page committed an overt act to accomplish the manufacturing of methamphetamine; and (4) Page, the alleged co-conspirator, was not a law enforcement agent or assisting law enforcement when the conspiracy began. The fighting issue is whether the State presented sufficient evidence on the "agreement" element of the offense.

■■■ Prior decisions have described an agreement to form a conspiracy as a

"concert of free wills," "union of the minds of at least two persons," and "a mental confederation involving at least two persons." *State v. Boyer*, 342 N.W.2d 497, 499 (Iowa 1984) (quoting *Regle v. State*, 9 Md.App. 346, 264 A.2d 119, 124 (1970)). Both direct and circumstantial evidence may be used to prove such a meeting of the minds. *Casady*, 597 N.W.2d at 804–05; *State v. Mapp*, 585 N.W.2d 746, 748 (Iowa 1998). Circumstantial evidence includes the declarations and conduct of the alleged conspirators and all reasonable inferences arising from such evidence. *Casady*, 597 N.W.2d at 805. Importantly, an agreement need not be—and often times is not—formal and express. *Id.* A tacit understanding—one "inherent in and inferred from the circumstances"—is sufficient to sustain a conspiracy conviction. *Mapp*, 585 N.W.2d at 748 (quoting 16 Am. Jur.2d *Conspiracy* § 10, at 204–05 (1998)).

The State persuaded the district court, and urges on appeal, that Speicher's presence in a meth lab, combined with proof that he ran from the police, constitutes proof of participation in a conspiracy to manufacture methamphetamine. In its words, "*involvement* in an ongoing manufacturing process is evidence of an *agreement* to manufacture, i.e., conspiracy." Speicher concedes his presence in a meth lab but contends on appeal that such proof, standing alone, is insufficient to prove either his involvement in the manufacturing process or an agreement to do so.

Given the record before us, we are compelled to agree with Speicher's argument. Our decision is fortified when we consider the case upon which the State relies, *State v. Casady*, 597 N.W.2d 801 (Iowa 1999). There, as here, the defendant challenged the sufficiency of proof to establish an agreement to manufacture methamphetamine. But, in contrast to the case before us, witnesses in *Casady* revealed substantial facts to support Casady's involvement in the drug operation: (1) He watched a co-conspirator crush cold medications and cook a mixture of substances in a microwave oven, standard activities of methamphetamine production; (2) Casady and others left the residence shortly before midnight and returned within half an hour, a period during which police officers observed two men hauling an ammonia canister from a local anhydrous facility, driving away without headlights; (3) one of the suspected thieves matched Casady's description; and (4) officers observed the thieves returning to the home from which Casady and the other man had departed, carrying the container into the garage. *Casady*, 597 N.W.2d at 805. Later, when a search warrant was executed, police found Casady hiding under a car in the garage. His pockets held gloves smelling of anhydrous ammonia. *Id.*

The substantial circumstantial proof of conspiracy evident in *Casady* is woefully missing in the record before us. Here, a rational juror could find that Speicher was in the garage where a methamphetamine lab was located and that his clothes were contaminated with fumes associated with the process of making the drug. Speicher, along with Page, ran when he saw police surrounding the garage. A police officer testified that when confronted about consent to search his home, Page responded "*I* was manufacturing the meth for my own use." (Emphasis added.) Narcotics officers recovered only one air filtration mask and one pair of gloves.

In a nutshell, the State's case would permit a jury to infer from Speicher's presence in the garage that he knew Page was manufacturing methamphetamine. But, to sustain a conviction for conspiracy under this record, the jury would also be required to infer—without additional evidentiary support—that Speicher agreed

with Page to participate in the manufacturing process. Without proof of any involvement from which to infer agreement, this essential element of the offense rests on nothing but conjecture and speculation. The State has failed, as a matter of law, to tender substantial proof on each of the essential elements of the offense.

We therefore reverse Speicher's conviction for conspiracy to manufacture methamphetamine. His conviction for interference with official acts, having not been appealed, is affirmed. Our decision renders it unnecessary to consider Speicher's alternative claim that his trial counsel furnished ineffective assistance by urging Speicher to refrain from taking the witness stand.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**