**STATE of Iowa, Appellee,**

v.

**Randy Lee CORSI, Appellant.**

**No. 03–0978.**

Supreme Court of Iowa.

Sept. 1, 2004.

Rehearing Denied Oct. 28, 2004.

Herbert Rogers, Sr. of Rogers Law Offices, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brad Walz, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Randy Corsi, appeals his conviction and sentence for conspiracy to manufacture methamphetamine. He claims (1) the evidence does not support his conviction, (2) his trial counsel rendered ineffective assistance, and (3) a sentencing enhancement was improperly applied to his term of imprisonment. We find no merit in these claims with the exception of the propriety of the sentencing enhancement. Therefore, we affirm the defendant's conviction, vacate his sentence, and remand this case for resentencing without the enhancement.

I. *Background Facts and Proceedings.*

Shortly after midnight on December 5, 2002, police officers investigating the reported smell of ammonia at a city residence observed through a basement window of the residence what appeared to be an active methamphetamine lab. The officers saw a man sitting on a stool with drug apparatus at his feet, apparently boiling ingredients for methamphetamine. This man was described by some officers as

balding and by others as wearing a flannel shirt. Due to the overwhelming fumes, the police decided it was necessary to intervene immediately, so they forced their way into the basement apartment.

The officers removed six persons from the apartment, including the defendant. Corsi was the only occupant who matched the description of a balding man wearing a long-sleeved flannel shirt. After obtaining consent for a search, the police found multiple items throughout the apartment consistent with methamphetamine manufacturing. A search of the defendant revealed lithium batteries, coffee filters, a needle, and two marijuana pipes with marijuana residue. The coffee filters "had an odor about them" and the officer confiscating them thought they were "probably chemically soaked."

Corsi was charged with manufacturing or conspiracy to manufacture more than five grams of methamphetamine in the presence of a minor, in violation of Iowa Code sections 124.401(1)(c)(6) and 124.401C (2001); multiple counts of possession of precursors of methamphetamine, in violation of section 124.401(4); and possession of marijuana, in violation of section 124.401(5). He was also alleged to be a habitual offender under section 902.8. In a subsequent jury trial, the defendant was found guilty of the conspiracy offense, but was acquitted of all other charges. After Corsi's motion for new trial and motion in arrest of judgment were overruled, he was sentenced to an indeterminate term of thirty years in prison with a ten-year minimum, in addition to a $5000 fine and license revocation.

On appeal, the defendant claims there was insufficient evidence to support his conviction, specifically with respect to his personal agreement to participate in the manufacturing operation. He also asserts he received ineffective assistance from his trial counsel in two ways: (1) failure to object to erroneous jury instructions; and (2) failure to conduct a reasonable investigation. Finally, Corsi contends the application of the sentencing enhancement for manufacturing methamphetamine in the presence of a minor under section 124.401C(1) was improper and resulted in an illegal sentence. We will separately address each issue.

## II. *Sufficiency of the Evidence.*

 A. *Scope of review.* If the jury's verdict is supported by substantial evidence, it is binding on the court. *State v. Speicher*, 625 N.W.2d 738, 740 (Iowa 2001). Therefore, our review is for correction of errors at law. *Id.*

 "Evidence is substantial if it could convince a rational jury of the defendant's guilt beyond a reasonable doubt." *Id.* at 741. If it only raises suspicion or speculation, it is not substantial. *Id.* In assessing the sufficiency of the evidence, we consider all the evidence in the record, but we view the record in the light most favorable to the State. *Id.*

B. *Elements of conspiracy offense.* Section 124.401(1) makes it a crime "for any person to ... conspire with one or more other persons to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance." Iowa Code section 706.1 defines conspiracy as follows:

1. A person commits conspiracy with another if, with the intent to promote or facilitate the commission of a crime which is an aggravated misdemeanor or felony, the person does either of the following:

 a. Agrees with another that they or one or more of them will engage in conduct constituting the crime or an at-

tempt or solicitation to commit the crime.

b. Agrees to aid another in the planning or commission of the crime or of an attempt or solicitation to commit the crime.

2. It is not necessary for the conspirator to know the identity of each and every conspirator.

3. A person shall not be convicted of conspiracy unless it is alleged and proven that at least one conspirator committed an overt act evidencing a design to accomplish the purpose of the conspiracy by criminal means.

4. A person shall not be convicted of conspiracy if the only other person or persons involved in the conspiracy were acting at the behest of or as agents of a law enforcement agency in an investigation of the criminal activity alleged at the time of the formation of the conspiracy.

Based on these statutes, the State was obligated to prove that (1) Corsi agreed with one or more persons to manufacture or attempt to manufacture methamphetamine or assist another in planning or committing this crime; (2) Corsi entered into the agreement with the intent to manufacture or promote the manufacture of methamphetamine; (3) one or more of the conspirators committed an overt act in furtherance of the manufacturing of methamphetamine; and (4) at least one of the co-conspirators was not a law enforcement agent or working with law enforcement when the conspiracy began. *See Speicher*, 625 N.W.2d at 741. The defendant claims the evidence was insufficient to establish the first element—that Corsi agreed with another to manufacture or attempt to manufacture methamphetamine, or agreed to assist another in planning or committing this offense. He asserts the evidence

merely showed he "walked in on the manufacturing activities" of others.

■ C. *Discussion.* Since a conspiracy is by nature clandestine, it will often rest upon circumstantial evidence and inferences drawn from that evidence. *See State v. Ross*, 573 N.W.2d 906, 914 (Iowa 1998) (holding evidence of an agreement may be direct or circumstantial). Thus,

"[a]n agreement that, because of its purpose or the means contemplated, amounts to a conspiracy need not be formal or express, but may be a tacit understanding; *the agreement may be inherent in and inferred from the circumstances, especially declarations, acts, and conduct of the alleged conspirators.*"

*State v. Casady*, 597 N.W.2d 801, 805 (Iowa 1999) (emphasis added) (citation omitted). On the other hand, circumstantial evidence that proves mere presence at the scene of the crime or association with those involved in the crime is not sufficient to show an agreement. *Speicher*, 625 N.W.2d at 742. We will indulge in " '[a]ll legitimate inferences arising reasonably and fairly from the evidence' " to support a verdict of conspiracy. *Casady*, 597 N.W.2d at 804–05 (citation omitted).

Turning to the record, we find the testimony of multiple police officers that they observed a balding man or a man in a long-sleeved flannel shirt cooking methamphetamine. Although each officer observed different aspects of this individual's appearance, the officers all agreed that the only person removed from the apartment minutes after these observations who matched their combined description was the defendant. In addition, two officers testified that when the occupants were removed from the apartment they recognized Corsi as the individual they had seen actively engaged in the cooking process. The fact that the officers only saw the

individual in the apartment for a short period of time or that they did not identify in their individual written reports that the defendant was the man they saw through the window were circumstances the jury was free to consider in determining what weight to give to the officers' testimony. *See State v. Grimme,* 338 N.W.2d 142, 146 (Iowa 1983) (stating "the credibility of the witnesses and weight of the evidence were for the jury to determine").

In addition to the officers' testimony was the uncontroverted fact the apartment was not Corsi's residence. His presence in the apartment, cooking methamphetamine, supports an inference that he had permission from—an agreement with—the apartment's residents to engage in this illegal activity. The existence of an agreement can also be inferred from the testimony of Douglas Fintel, who lived in the apartment and stated to the police that "he knew it was wrong that he let them cook in the apartment, but [due to] his addiction ... he let it happen." Furthermore, the defendant's possession of lithium batteries and coffee filters, both items essential to the manufacturing process, is an additional fact indicating the defendant had agreed to participate in the manufacturing operation. *See State v. Weatherly,* 679 N.W.2d 13, 18 (Iowa 2004) (rejecting challenge to sufficiency of evidence to prove agreement where the bottom half of a plastic pop bottle containing a coffee filter was found in the defendant's pocket).

The defendant points to the testimony of Bruce Fuller who said he went to the apartment that night after having called and received permission from an unidentified person to make methamphetamine there. Prior to Fuller's arrival, Corsi and Cheryl Refshauge, the other resident of the apartment, had gone to a convenience store to buy beer. When they returned, Fuller had already started the manufactur-

ing process. According to Fuller, he acted alone and no one else, including Corsi, assisted him. Fuller also denied that the defendant provided any of the ingredients, asserting that when the police broke in the door Corsi picked up the lithium batteries from the table where Fuller had put them. The defendant argues this evidence proves he simply walked in on the illegal activity and was not involved in any agreement to manufacture methamphetamine.

Although the jury could have concluded the defendant was simply in the wrong place at the wrong time, they were not required to do so in the face of evidence that Corsi was seen cooking methamphetamine and that he possessed items needed for this process. Moreover, the jury was free to disbelieve Fuller's testimony. *See id.* (stating jury could have found defendant's exculpatory statement was untrue). Fuller had already pled guilty to conspiracy to manufacture methamphetamine and was repeatedly evasive when questioned about the identity of others involved in the conspiracy. The jury could have concluded Fuller's exonerating testimony was motivated by his reluctance to name names.

We also reject Corsi's argument that the jury's verdict of guilty on the conspiracy charge was inconsistent with its acquittal on the manufacturing charge. It is possible the jury found a conspiracy to manufacture methamphetamine, yet concluded no product had been prepared or produced before the process was interrupted by law enforcement. *See State v. Royer,* 632 N.W.2d 905, 908 (Iowa 2001) (holding in order to be guilty of manufacturing methamphetamine, defendant must produce the proscribed amount of the illegal substance). Moreover, the fact that Corsi may not have been present when the manufacturing process was started does not negate the possibility that he joined in the enterprise upon his return. *See 16 Am.*

Jur.2d *Conspiracy* § 10, at 206 (1998) ("The agreement need not be entered into by all the parties to it at the same time, but may be reached by successive actions evidencing their joining of the conspiracy.").

We conclude the evidence is sufficient to support the defendant's conviction on the conspiracy charge. Therefore, the trial court did not err in denying Corsi's post-trial motions.

## II. *Ineffective Assistance of Counsel.*

 A. *General principles.* To succeed on this claim, the defendant must show his trial counsel failed to perform an essential duty and this failure resulted in prejudice to the defendant. *State v. Graves,* 668 N.W.2d 860, 869 (Iowa 2003). Although ineffective-assistance-of-counsel claims should generally be preserved for a postconviction relief action where a more complete factual record can be developed, such claims will be resolved on direct appeal where it appears the outcome will not be altered by taking additional evidence. *Id.* We think that is the case here.

 B. *Instructional error.* The defendant claims his counsel was ineffective in failing to object to the court's instructions on the manufacturing and conspiracy offenses. The challenged instructions were intended to inform the jury of the proof required of the State to show the defendant violated section 124.401(1). That statute makes it "unlawful for any person to manufacture, . . . or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture . . . a controlled substance." *See* Iowa Code § 124.401(1).

In instruction no. 17, the court told the jury that the defendant could be guilty of manufacturing a controlled substance upon proof that he (1) "manufactured methamphetamine"; (2) "aided and abetted anoth-er who manufactured methamphetamine"; or (3) "acted together with another who manufactured methamphetamine." Instruction no. 18 purported to define the alternative ways in which the State might prove the defendant guilty of conspiracy to manufacture a controlled substance. This instruction included three alternatives, but as the parties agree, only the third alternative actually defined a conspiracy offense. The first alternative was akin to an aiding and abetting instruction and required proof that

1. On or about the 5th day of December, 2002, the defendant knowingly acted with one or more persons to manufacture or attempt to manufacture methamphetamine.

2. The defendant:

 a. had the specific intent to promote or facilitate the manufacture of methamphetamine, or

 b. knew that the person or persons with whom he acted had the specific intent to promote or facilitate the manufacture of methamphetamine.

The second alternative of the conspiracy instruction defined the elements of the "common scheme and design" alternative of section 124.401(1) and required the State to prove that

1. On or about the 5th day of December, 2002, the defendant entered into a common scheme or design with one or more persons to manufacture or attempt to manufacture methamphetamine.

2. The defendant:

 a. had the specific intent to promote or facilitate the manufacture of methamphetamine, or

 b. knew that the person or persons with whom he entered into a common scheme or design had the specific intent to promote or facilitate

the manufacture of methamphetamine.

Another instruction defined "common scheme" as "a series of separate transactions or acts which are the product of a single or continuing motive."

Corsi claims his trial counsel should have objected to these instructions because (1) they incorrectly set forth multiple alternatives for the conspiracy crime; and (2) the first two alternatives in the conspiracy instruction did not require an overt act, an essential element of conspiracy. As the defendant's arguments with respect to each claim are interrelated, we discuss them together.

The defendant argues the jury could have convicted him under the conspiracy count by some jurors finding him guilty of conspiracy, others finding him guilty under the "aiding and abetting" alternative of the conspiracy instruction, and other jurors finding him guilty of the "common scheme" alternative of that instruction. The defendant argues this route to conviction is improper because the first two alternatives of the conspiracy instruction were not even true conspiracy alternatives.

This court has held, however, that a jury need not "'concur in a single view of the transaction disclosed by the evidence.'" *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981) (citation omitted). As we said in *Duncan*, "'[I]f substantial evidence is presented to support each alternative method of committing a single crime, and the alternatives are not repugnant to each other, then unanimity of the jury as to the mode of commission of the crime is not required.'" *Id.* (citation omitted). In the present case, regardless of any error by the trial court in labeling the three alternatives in instruction no. 18 "conspiracy," they were each appropriate bases for finding a violation of section 124.401(1). *See State v. Maghee*, 573 N.W.2d 1, 7 (Iowa

1997) (holding conspiracy is not a separate crime, but is simply one way of violating section 204.401(1), now section 124.401(1), Iowa's drug trafficking statute); *State v. Williams*, 305 N.W.2d 428, 431 (Iowa 1981) (holding section 204.401(1) "is a [drug] trafficking statute providing for several means of its violation"). Therefore, we do not think the defendant was prejudiced by the court's decision to put different methods of violating section 124.401(1) in one instruction and calling them all "conspiracy."

Similarly, we find no error in the court's failure to expressly include an overt act as an element in the first two alternatives of the conspiracy instruction. As both parties agree, these alternatives were not really conspiracy theories. Furthermore, the defendant does not contend they were not proper instructions on the "aiding and abetting" and "common scheme and design" theories. In any event, both alternatives did require an overt act. The first alternative required the jury to find "the defendant knowingly *acted* with one or more persons to manufacture or attempt to manufacture methamphetamine" and the second alternative required proof of a common scheme or design, defined as "a series of separate *transactions or acts.*" (Emphases added.)

Finally, we consider Corsi's claim that instruction no. 18 was improper because one may not be convicted of aiding and abetting a conspiracy. The weakness in this argument is that the jury was not instructed that it could convict the defendant if it found he aided and abetted a conspiracy. The first alternative of the conspiracy instruction required proof that the defendant "acted with one or more persons to manufacture or attempt to manufacture methamphetamine." Although this alternative was incorrectly labeled a conspiracy theory, it did not incorporate

conspiracy elements and stood on its own as a separate basis upon which the jury validly could find the defendant violated section 124.401(1).

In summary, Corsi's trial counsel did not render ineffective assistance when he failed to object to the marshalling instruction on conspiracy. Although the instruction may have been subject to a valid criticism that it inappropriately classified two alternative ways of violating section 124.401(1) as conspiracy, the error was one of labeling and not one of substance. Consequently, there was no prejudice to the defendant that would have required competent counsel to lodge an objection. We hold, therefore, that Corsi cannot succeed on his ineffective-assistance-of-counsel claim based on alleged instructional errors as a matter of law. *See State v. Aldape,* 307 N.W.2d 32, 44 (Iowa 1981) (rejecting ineffective-assistance-of-counsel claim made on direct appeal where instruction, even though erroneous, caused no prejudice).

■ *C. Inadequate investigation.* Corsi claims his counsel should have obtained a videotape from the convenience store that would have corroborated his contention that he was not at the apartment when Fuller arrived to set up the manufacturing operation and that he did not go to the store to purchase lithium batteries. We do not think there is a reasonable probability that the videotape, even if it confirmed the defendant had left the apartment to purchase beer, not batteries, would have changed the outcome of the trial. *See Ledezma v. State,* 626 N.W.2d 134, 143 (Iowa 2001) (defendant claiming ineffective assistance of counsel "must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" (citation omitted)).

Whether or not the defendant was absent from the apartment at the time the conspiracy to manufacture methamphetamine began is not determinative of his guilt. There is no requirement that a participant in a conspiracy must be present when the illegal activity starts. It is sufficient that Corsi joined in the conspiracy once he returned from his trip to the convenience store.

We also reject the defendant's argument that the State's case was "tenuous" at best if the videotape had shown that Corsi did not buy batteries that night. Proof of Corsi's participation in the manufacturing of methamphetamine did not turn on whether he purchased the lithium batteries needed for the process. Several police officers identified him as one of the "cookers" and he was found to have not only batteries on his person, but also coffee filters, another item used in the production of methamphetamine. We do not think there is a reasonable probability that proof the defendant did not purchase the batteries would have changed the outcome of this trial. Therefore, we find no merit in Corsi's ineffective-assistance-of-counsel claim based on his attorney's failure to subpoena the videotape.

III. *Sentencing Enhancement.*

■ The defendant's sentence was increased five years pursuant to Iowa Code section 124.401C(1), which provides:

In addition to any other penalties provided in this chapter, a person who is eighteen years of age or older and who either directly or by extraction from natural substances, or independently by means of chemical processes, or both, unlawfully *manufactures* methamphetamine, its salts, isomers, and salts of its isomers in the presence of a minor shall be sentenced up to an additional term of confinement of five years.

(Emphasis added.) Corsi claims this statute by its terms applies only to manufacturing methamphetamine, not conspiracy to do so. Since he was acquitted of the manufacturing charge, he argues the court improperly enhanced his sentence.[1] The State contends the enhancement statute does not require that a particular amount of methamphetamine be manufactured and, therefore, it encompasses a conspiracy to manufacture methamphetamine that is established by an overt act just short of production. We review the trial court's interpretation and application of section 124.401C(1) for correction of errors at law. *See State v. Morris*, 416 N.W.2d 688, 689 (Iowa 1987).

Iowa Code section 124.101(16) defines "manufacturing" in pertinent part as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance." We have interpreted this definition to require production of the illegal material. *See Royer*, 632 N.W.2d at 908; *Casady*, 597 N.W.2d at 807. In *Casady*, this court contrasted the manufacturing alternative of section 124.401(1) with the conspiracy alternative:

> The first alternative means of violating the statute is the actual manufacture of drugs, but the second alternative includes a conspiracy to manufacture it. Contrary to Casady's argument, it is not necessary for the State to prove the second alternative by also proving the first. While the State must show an overt act toward the accomplishment of the conspiracy, it did not have to prove the completed act.

597 N.W.2d at 807 (citations omitted). We reject the State's argument that "manufacturing" means something short of the "actual manufacture of drugs" when used in the enhancement statute.

Because the enhancement statute applies only to the manufacturing of methamphetamine, and because Corsi was acquitted of that charge, his sentence is not subject to enhancement under section 124.401C(1). Corsi's conviction of conspiracy to manufacture methamphetamine does not trigger the enhancement because under our prior cases a conspiracy conviction does not require proof of manufacturing. Therefore, the trial court imposed an illegal sentence when it added five years to the defendant's term of imprisonment. Accordingly, we vacate Corsi's sentence and remand this case to the district court for resentencing.

**JUDGMENT OF CONVICTION AFFIRMED, SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING.**

---

1. Corsi also argued in his brief that the district court had improperly enhanced his sentence because the jury had not made a finding of the factual prerequisite for the enhancement. *See Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435, 455 (2000) (holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). Although there was initially some confusion on appeal concerning what had happened in the district court, it now appears certain that the jury was instructed that if it found the defendant guilty of the manufacturing or conspiracy charge, it was to answer a question "whether the defendant manufactured or conspired to manufacture methamphetamine in the presence of minors." This question was answered affirmatively by the jury and consequently there was no *Apprendi* violation.