# IN THE COURT OF APPEALS OF IOWA

No. 19-0784
Filed July 1, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DANIEL LEE WHITE,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Jackson County, Mark D. Cleve, Judge.

A defendant appeals his conviction of operating while intoxicated, second offense. **AFFIRMED.**

Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Richard J. Bennett, Assistant Attorney General, for appellee.

Considered by May, P.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MAY, Judge.**

Daniel White appeals his conviction of operating while intoxicated, second offense. On appeal, White argues (1) his conviction was not supported by sufficient evidence and (2) his trial counsel was ineffective for failing to object to testimony regarding a preliminary breath test. We affirm.

**I. Background Facts and Proceedings**

In the evening of January 11, 2019, police received a report of an individual drinking and driving recklessly in a trailer park. Officer Mike Owen responded. He located the reported car and followed it. He observed the car travelling twenty miles per hour in a twenty-five-mile-per-hour zone. Eventually, Officer Owen put on his lights. The car stopped at an angle to the curb. The driver, White, got out of the car and began yelling at Officer Owen. Officer Owen explained he received a report of drunk driving. White told Owen he was out looking for lawn mowers in the trailer park.[1]

Officer Owen noted White had trouble standing and walking. And White had slurred speech. Officer Owen asked White to perform field sobriety tests. White complied. According to Officer Owen, White failed all three tests—the horizontal gaze nystagmus test, the turn-and-walk test, and the one-leg stand test. Ultimately, Officer Owen determined White was under the influence. Officer Owen transported White to the Law Enforcement Center. White refused to take the DataMaster chemical test.

---

[1] Later, White stated he was investigating drug dealers and other criminals. But, he explained, he did not want to provide that information in a public street.

The State charged White with operating while intoxicated, second offense.[2] *See* Iowa Code § 321J.2(1)(a), (2)(b) (2019). At trial, White testified that he had consumed two sixteen-ounce cans of beer before driving. And he testified it was "[p]ossible" the beers had an effect on him. The jury found him guilty of operating while intoxicated. White now appeals.

## II. Sufficiency of the Evidence

White first contends the jury "lacked sufficient evidence to convict" him of operating while intoxicated. He alleges his "driving, interactions with the officer, and performance on the field sobriety test[s] support the conclusion that [he] was merely defiant and frustrated" rather than under the influence of alcohol.

"Because a jury verdict is binding on us when supported by substantial evidence, our appellate review is limited to the correction of errors at law." *State v. Speicher*, 625 N.W.2d 738, 740 (Iowa 2001). "Evidence is substantial if it could convince a rational jury of a defendant's guilt beyond a reasonable doubt." *Id.* at 741. We "consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (quoting *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002)).

Iowa Code section 321J.2 criminalizes operating a motor vehicle while intoxicated, commonly referred to as "OWI." Section 321J.2(1) defines five ways in which OWI can be committed:

---

[2] White stipulated to having a prior operating-while-intoxicated offense.

1.  Operating a motor vehicle "[w]hile under the influence of an alcoholic beverage,"

2.  Operating a motor vehicle "[w]hile under the influence of an . . . other drug,"

3.  Operating a motor vehicle "[w]hile under the influence of . . . a combination of such substances,"

4.  Operating a motor vehicle "[w]hile having an alcohol concentration of .08 or more," and

5.  Operating a motor vehicle "[w]hile any amount of a controlled substance is present in the person, as measured in the person's blood or urine."

Here, the State alleged White operated a motor vehicle "[w]hile under the influence of an alcoholic beverage." Iowa Code § 321J.2(1)(a). And the jury was appropriately instructed that:

> A person is "under the influence" when, by drinking liquor and/or beer, one or more of the following is true:
> 1. [the person's] reason or mental ability has been affected[,]
> 2. [the person's] judgment is impaired[,]
> 3. [the person's] emotions are visibly excited[, or]
> 4. [the person] has, to any extent, lost control of bodily actions or motions.

*See, e.g.*, *State v. Van Cleave*, No. 12-0041, 2013 WL 3458192, at *3 (Iowa Ct. App. July 10, 2013). So White's "conduct and demeanor" were "important considerations" in determining whether he committed OWI. *See State v. Price*, 692 N.W.2d 1, 3 (Iowa 2005); *see also State v. Orr*, No. 05-1864, 2006 WL 2419198, at *2 (Iowa Ct. App. Aug. 23, 2006) ("A person may be found guilty under section 321J.2(1)(a) in the absence of admissible evidence from chemical tests.").

With these principles in mind, we turn to the record. Both at the traffic stop and at trial, White admitted to drinking beer before driving. And, at trial, he admitted it was "[p]ossible" the beer had an effect on him. *See also State v. Newton*, 929 N.W.2d 250, 255 (Iowa 2019) ("It is common knowledge that the consumption of alcohol and other drugs can impair the ability to safely operate a motor vehicle."). Indeed, Officer Owen described several indicators that White was under the influence:

> [H]e had a hard time standing. When I asked him, he leaned up against his car door when he got out and that usually has—leads you to believe that they need help standing up, and then he had a hard time walking after that. And his slurred speech. I mean, it just—there was multiple things that—and—and when you get that combative, a lot of times that makes us believe that you're under the influence.

*See State v. Blake*, No. 15-1771, 2016 WL 4384253, at *2 (Iowa Ct. App. Aug. 17, 2016) ("The court may also consider an officer's opinion regarding another person's sobriety."). Moreover, White failed all three of the field sobriety tests. *See State v. Bunce*, No. 13-1024, 2014 WL 1494961, at *2 (Iowa Ct. App. Apr. 16, 2014) ("Field sobriety tests allow officers to assess whether a driver is under the influence of alcohol."). Then White refused to provide a breath sample for the DataMaster. And the jury was properly instructed it could "consider" White's "refusal in reaching" its verdict. *See* Iowa Code § 321J.16 ("If a person refuses to submit to a chemical test, proof of refusal is admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A."); *State v. Young*, 232 N.W.2d 535, 538 (Iowa 1975) ("Of course, evidence of the refusal of the statutory tests is clearly admissible.").

Viewing all of the evidence in the light most favorable to the State, we find there was sufficient evidence to support White's conviction.

## III. Ineffective Assistance of Counsel

White also alleges his counsel was ineffective for failing to object to the mention of a preliminary breath test during Officer Owen's testimony.[3] Specifically, White points to this colloquy between the State and Officer Owen:

> Q. So what did you end up doing after you determined that [White] did not pass the field sobriety testing? A. I requested a PBT, a preliminary breath test.
> Q. Okay. After all of that, did you end up determining that he was intoxicated? A. Yes.

Defense counsel made no objections during this colloquy. White claims counsel's silence amounted to ineffective assistance.

As a general rule, though, "ineffective assistance of counsel claims are best resolved by postconviction proceedings to enable a complete record to be developed and afford trial counsel an opportunity to respond to the claim." *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004). That is certainly the case where, as here, the record does not permit us to say whether trial counsel's "failure to object implicated trial tactics or strategy." *State v. Clay*, 824 N.W.2d 488, 500–01 (Iowa 2012); *see also Caldwell v. State*, 494 N.W.2d 213, 214 (Iowa 1992) ("Mere

---

[3] We recognize Iowa Code section 814.7 (2019) was recently amended to provide in pertinent part: "An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief" and "shall not be decided on direct appeal from the criminal proceedings." *See* 2019 Iowa Acts ch. 140, § 31. In *State v. Macke*, however, our supreme court held the amendment "appl[ies] only prospectively and do[es] not apply to cases pending on July 1, 2019." 933 N.W.2d 226, 235 (Iowa 2019). We are bound by our supreme court's holding. We conclude, therefore, the amendment "do[es] not apply" to this case, which was pending on July 1, 2019. *Id.*

mistakes in judgment or erroneous trial strategies do not necessarily amount to ineffective assistance of counsel."). So we preserve White's claim. *See Truesdell*, 679 N.W.2d at 616.

## IV. Conclusion

We find sufficient evidence supports White's conviction. And we preserve his ineffective-assistance claim.

**AFFIRMED.**